IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| Dymatize Enterprises, LLC | ) | |
| | ) | |
|       Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:16-cv-00557 |
| | ) | |
| Myogenix, Inc. | ) | |
| | ) | |
| | ) | JURY TRIAL DEMANDED |
|       Defendant. | ) | |

## **COMPLAINT**

1.     Dymatize sells ISO.100, a well-known protein supplement.  Recently, Defendant

began selling a directly competing product using a confusingly similar name and trade dress:

**Dymatize**                                                  **Defendant**

 

2.     Plaintiff Dymatize Enterprises, LLC ("Dymatize"), for its Complaint against

Defendant Myogenix, Inc. ("Defendant"), states as follows:

3.      This is an action for trademark and trade dress infringement.  For years, Dymatize's ISO.100 protein supplement has been widely recognized in the nutritional supplement industry.  Yet, despite ISO.100's renown and Defendant's familiarity with the industry, Defendant recently began selling the same type of product – a protein supplement – bearing a nearly identical name – "ISO-1."  Adding to the confusion, Defendant's trade dress for its ISO-1 product closely resembles Dymatize's ISO.100 trade dress.  Thus, Defendant's use of ISO-1 in connection with nutritional and dietary supplements, as well as its choice of trade dress, is likely to cause confusion with Dymatize's ISO.100 mark.

## Parties

4.      Dymatize is a Delaware limited liability company and a wholly owned subsidiary of Post Holdings, Inc. located in St. Louis, Missouri.

5.      Upon information and belief, Defendant is a California corporation with a principal place of business at 2309 A Street, Santa Maria, California 93455.

## Jurisdiction and Venue

6.      Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338(a) (trademarks).  Dymatize's claims arise under the laws of the United States, specifically, 15 U.S.C. §§ 1114 and 1125.  Subject matter jurisdiction exists over Dymatize's remaining common law claims under 28 U.S.C. § 1367(a) because the claims are so related that they form part of the same case or controversy.

7.      Upon information and belief, this Court has personal jurisdiction over Defendant because Defendant sells its products in Missouri, including in this judicial district.  Upon information and belief, Defendant also markets its products to individuals known to Defendant to be located in Missouri via the internet at interactive websites including myogenix.com,

- 2 -

amazon.com, allstarhealth.com, bodybuilding.com, and planetarynutrition.com.  Defendant thereby conducts continuous and systematic activities in this jurisdiction and/or committed the tortious acts described herein in Missouri and in this judicial district, or otherwise established contacts with this judicial district sufficient to make the exercise of personal jurisdiction proper.

8.      Upon information and belief, venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and a substantial part of property that is the subject of the action is situated in this judicial district.

## Facts Common to All Counts

9.      Dymatize has been in existence since at least as early as 1994.

10.      Since that time, Dymatize's extensive R&D and vast branding efforts have helped the company grow into a global leader, creating millions of customers around the world and in this country who seek out Dymatize's high quality nutritional supplements.

11.      Dymatize's most popular product is its ISO.100 protein supplement.

12.      The formula for ISO.100 was developed to ensure that customers received a high quality protein supplement, because, as is known in the industry, not all protein supplements are created equally.

13.      The process in which a protein supplement is created and its formulaic makeup are factors important to muscle development, such as rate of digestion and delivery of amino acids to muscle cells.  Put simply, the effectiveness of protein supplements can vary widely based on their ingredients and how they are made.

14.      In recent years, an increasing number of inferior quality, and sometimes counterfeit, protein supplements have made their way into the marketplace.

15.     Inferior quality protein supplements present problems for consumers.  Unlike other types of products where look, taste, and/or smell may provide an indication of the product's quality, the quality of protein supplements is hard to detect.

16.     Customers rely on established supplement brands, whose quality is known and trusted.

17.     Dymatize has established a strong, positive reputation and significant goodwill with its customers by delivering consistently high quality products over years.

18.     Consumers in the nutritional and dietary supplement category recognize and trust the Dymatize ISO.100 brand.

19.     Dymatize's products, including ISO.100, are sold throughout the United States at retail stores such as GNC and the Vitamin Shoppe, as well as numerous online retailers, such as, www.bodybuilding.com.

20.     Dymatize's ISO.100 product was named the "2015 Isolate of the Year" by www.bodybuilding.com.  Dymatize's ISO.100 product has received the award three consecutive years.

*Dymatize's ISO.100 Trademark and Trade Dress*

21.     Dymatize owns the trademark ISO.100 as shown in U.S. Registration No. 4,312,750, which covers dietary and nutritional supplements in international class 5.  A copy of the registration is attached and incorporated herein by reference as Exhibit A.

22.     Dymatize has used the ISO.100 mark in connection with dietary and nutritional supplements since at least as early as 2004.

23.     U.S. Reg. No. 4,312,750 covers the mark ISO.100 as standard characters.

- 4 -

24. The standard character format of U.S. Reg. No. 4,312,750 covers any manner of display of the mark ISO.100.

25. Dymatize has used the trade dress for the ISO.100 mark in connection with its protein supplement since at least as early 2004, an current example of which is shown below:



26. Dymatize has invested significant time and resources developing its ISO.100 branding, including the ISO.100 mark and trade dress, and the goods and services it provides thereunder.

27. Dymatize's ISO.100 trade dress is distinctive and nonfunctional.

28. Since introduction of the product in 2004, Dymatize has continuously used the ISO.100 mark and trade dress in the marketplace.

29. Consumers in the United States recognize the ISO.100 mark and trade dress as indicators of source, and associate the ISO.100 mark and trade dress with Dymatize.

*Defendant's Infringing Activities*

30. Defendant sells protein supplement products bearing the mark "ISO-1" ("the Accused Mark" or the "ISO-1 mark").

31.    Defendant sells its ISO-1 protein supplement product on interactive internet websites, including at least myogenix.com, amazon.com, allstarhealth.com, bodybuilding.com, and planetarynutrition.com.

32.    The trade dress used in association with Defendant's ISO-1 protein supplement is substantially similar to the ISO.100 trade dress.

33.    Dymatize's ISO.100 product and  Defendant's ISO-1 product are shown below:

**Dymatize**                                          **Defendant**

 

34.    The trade dress used in association with Defendant's ISO-1 protein supplement is likely to cause confusion with the ISO.100 trade dress.

35.    Screenshots from a website where Defendant is selling its ISO-1 product in interstate commerce are attached hereto as Exhibit B and incorporated by reference herein.

36.    On October 21, 2015, Defendant applied to the U.S. Patent and Trademark Office ("USPTO") to federally register its trademark "ISO-1" in connection with dietary supplements in international class 5.  The USPTO assigned Defendant's application serial number 86/794679 ("Defendant's Application").

37.     In Defendant's Application, Defendant alleged first use of the Accused Mark of September 11, 2015.

38.     Defendant's first use of its ISO.1 mark was after Dymatize established rights in ISO.100.

39.     Defendant adopted a trade dress confusingly similar to Dymatize's trade dress for its protein supplement product.

40.     Upon information and belief, the two protein supplement products with substantially the same names and substantially similar trade dress are sold side by side on the same store shelves.

41.     Defendant's trade dress for its ISO-1 product is confusingly similar to Dymatize's trade dress for its ISO-100 product.

42.     Defendant's ISO-1 mark is confusingly similar to Dymatize's ISO.100 mark.

43.     The USPTO also concluded that the two marks are confusingly similar.

44.     On February 11, 2016, the USPTO issued an Office Action in connection with Defendant's Application.

45.     In the office action, the USPTO stated that "[r]egistration of the applied for mark ISO-1 is refused because of a likelihood of confusion with the mark ISO.100 in U.S. Registration No. 4312750." *See* Exhibit C.

46.     The USPTO said the following factors were the most relevant in the USPTO's refusal to allow the ISO-1 mark: "similarity of the marks, similarity and nature of the goods and/or services, and similarity of the trade channels of the goods and/or services." *Id.*

47.     In conducting the analysis, the USPTO stated that the "marks ISO-1 and ISO.100 make similar commercial impressions because they both consist of the letters 'ISO' combined

- 7 -

with a number that begins with '1,' with those elements separated by punctuation … [Dymatize] uses the '.' In a manner similar to the hyphen in the applied-for mark." *Id.*

48.     The USPTO also stated, "[T]he marks are similar in appearance in sound as the majority of the marks appear **almost identical**." *Id.* (emphasis added).

49.     The USPTO also stated, "In conclusion, because the applied-for mark and the registered mark make similar commercial impressions and because the goods are identical there is a likelihood of confusion between the two marks and the applied-for mark must be refused registration under Trademark Act Section 2(d)." *Id.*

*Defendant's Awareness of Dymatize and the ISO.100 Mark and Trade Dress*

50.     Dymatize is well-known in the nutritional and dietary supplement industry.

51.     Dymatize has established significant relevant consumer awareness of its ISO.100 brand throughout the United States.

52.     Dymatize and Defendant are competitors and deal in the same channels of trade.

53.     The number of providers of protein supplements is relatively small compared to many other industries.

54.     Upon information and belief, Defendant was aware of Dymatize and its ISO.100 mark.

55.     Despite Defendant's awareness of the ISO.100 mark and trade dress, Defendant adopted a branding scheme and mark that is confusingly similar to Dymatize's.

**COUNT I**
15 U.S.C. § 1114 (Infringement of a Registered Trademark)

56.     Dymatize adopts and incorporates by reference the allegations of Paragraphs 1 through 55.

57.     Dymatize owns U.S. Registration No. 4,312,750 for the mark ISO.100.

58.     Defendant's use of the Accused Mark in connection with competing services is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Dymatize, or as to the origin, sponsorship, or approval of Defendant's goods, services or commercial activities by Dymatize.

59.     Defendant's use of the Accused Mark has damaged Dymatize.

60.     Defendant's use of the Accused Mark caused and continues to cause irreparable harm to Dymatize, for which Dymatize has no adequate remedy at law.

61.     Dymatize is entitled to recover as yet undetermined amounts specified in 15 U.S.C. § 1117.

62.     Dymatize has no adequate remedy at law inasmuch as money damages alone would not compensate Dymatize for the permanent loss of its proprietary rights, established goodwill and business reputation from the infringement caused by Defendant's use of the Accused Mark.  Unless this Court acts to enjoin Defendant, its acts herein complained of will cause irreparable damage to Dymatize's property rights, goodwill, and reputation, and will cause great and irreparable damage to Dymatize.

**COUNT II**
15 U.S.C. § 1125 (Trademark Infringement)

63.     Dymatize adopts and incorporates by reference the allegations of Paragraphs 1 through 62.

64.     Dymatize has used the ISO.100 mark in connection with its protein supplement products since at least as early as 2004.  The ISO.100 mark is a source identifier for the goods and services of Dymatize.

65.     Defendant's use of the Accused Mark in connection with competing goods and services is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,

connection, or association of Defendant with Dymatize, or as to the origin, sponsorship, or approval of Defendant's goods, services or commercial activities by Dymatize, and in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, and geographical origin of Defendant's goods, services, and commercial activities.

66.     Defendant's use of the Accused Mark has damaged Dymatize.

67.     Defendant's use of the Accused Marks constitutes false representations, false descriptions, and false designations of origin of its goods and services.

68.     Defendant's activities have caused and, unless enjoined by this Court, will continue to cause irreparable harm to Dymatize, a likelihood of confusion and deception of members of the trade and general public, and, additionally, injury to Dymatize's goodwill and reputation, for which Dymatize has no adequate remedy at law.

69.     Dymatize is entitled to recover the as yet undetermined amounts specified in 15 U.S.C. § 1117.

70.     Upon information and belief, Defendant was aware of Dymatize's prior use and registration of the ISO.100 mark, making Defendant's actions willful.

71.     Dymatize is entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125, 1116 and 1117.

## COUNT III
### 15 U.S.C. § 1125 (Trade Dress Infringement)

72.     Dymatize adopts and incorporates the allegations of Paragraphs 1 through 71.

73.     Upon information and belief, before they introduced the ISO-1 product to the market, Defendant was aware of Dymatize's protectable rights in its ISO.100 trade dress.

74.    Dymatize's trade dress for the ISO.100 product involves the product's packaging, labelling, and/or design.

75.    Dymatize's trade dress for the ISO.100 product is inherently distinctive and/or has acquired secondary meaning.

76.    Dymatize's trade dress for the ISO.100 product is nonfunctional.

77.    Upon information and belief, Defendant knew of Dymatize's trade dress for the ISO.100 product.

78.    Defendant's use of Dymatize's trade dress has damaged Dymatize.

79.    Defendant's selling, offering for sale, advertising and marketing the ISO-1 product in the ISO-1 product packaging creates, causes and/or contributes to a false association between Defendant and/or ISO-1 product and Dymatize and its ISO.100 product.  Defendant's actions have caused and contributed or is likely to cause or contribute to consumer confusion as to the origin of, or affiliation between, Defendant (and its product) and Dymatize and its product, and have traded unfairly upon Dymatize's goodwill and reputation, and continue to do so, in violation of 15 U.S.C. §1125.

80.    Defendant's advertising, marketing, selling and offering for sale of the ISO-1 product described above is with knowledge and in willful disregard of Dymatize's intellectual property rights in Dymatize's ISO.100 trade dress.

81.    Defendant's conduct has irreparably harmed Dymatize and will continue to irreparably harm Dymatize unless enjoined by this Court, as a result of which Dymatize is without an adequate remedy at law.

**COUNT IV**
Common Law Trademark and Trade Dress Infringement

82.    Dymatize adopts and incorporates the allegations of Paragraphs 1 through 81.

83.     Dymatize has used the ISO.100 mark and trade dress in connection with its protein supplement product since at least as early as 2004.

84.     The ISO.100 mark and trade dress are inherently distinctive and/or have acquired secondary meaning, and is a valid common law trademark.

85.     Dymatize is the rightful owner of all common law rights in the ISO.100 mark and trade dress in connection with its various goods and services.

86.     Defendant could have selected any number of alternative non-infringing marks trade logos or trade dress, but instead decided to use the Accused Mark with, upon information and belief, full knowledge of Dymatize's ISO.100 mark and trade dress.

87.     Upon information and belief, Defendant's use of the Accused Mark is done with improper motive and reckless indifference to Dymatize's rights.

88.     Defendant's use of the Accused Mark and Dymatize trade dress has damaged Dymatize.

89.     Defendant's conduct has damaged Dymatize, and Defendant will be unjustly enriched by its acts.

90.     Defendant's use of the Accused Mark caused and continues to cause irreparable harm to Dymatize, for which Dymatize has no adequate remedy at law.

**Prayer for Relief**

**WHEREFORE**, Dymatize respectfully demands judgment against Defendant as follows:

A.     Defendant, its subsidiaries, affiliates, franchisees, licensees, officers, agents, sales representatives, servants, employees, associates, successors and assigns, and all persons acting under its control, by, through, under, or in active concert or in participation with Defendant, pursuant to 15 U.S.C. § 1116, be permanently enjoined from:

1.  Using the Accused Mark or any other mark or trade name that is likely to cause confusion, mistake or deception with Dymatize or the ISO.100 mark;

2.  Using any mark or doing any act or thing likely to confuse the public that Defendant's goods or services are in any way connected with Dymatize, including, but not limited to, using on the worldwide web the Accused Mark, the ISO.100 mark or any mark or logo confusingly similar thereto, including ISO-1, or printing, publishing, promoting, lending, or distributing any advertisement, whether written, audio or video, which uses the Accused Mark, the ISO.100 mark, or any mark or logo confusingly similar thereto, including ISO-1.

B.  Defendant must deliver up for destruction all goods, advertising, literature, and other forms of promotional material bearing or showing the Accused Mark or a confusingly similar mark or trade name pursuant to 15 U.S.C. §1118;

C.  Defendant must change its trade dress to one that does not incorporate a packaging, labelling, and design substantially similar to or likely to cause confusion with Dymatize's ISO.100 trade dress;

D.  Defendant must pay Dymatize such damages as Dymatize has sustained as a result of Defendant's infringement of the ISO.100 mark;

E.  Defendant must account for all gains, profits, and advantages derived from its acts of infringement pursuant to 15 U.S.C. § 1117 or, at Dymatize's option, the damages allowed by 15 U.S.C. § 1117(c).

F.  An order that this is an exceptional case under 15 U.S.C. §1117 and an award to Dymatize of a sum above the amount found as actual damages, not exceeding three times such amount, and its reasonable attorney's fees;

G.     Defendant must pay Dymatize its costs and disbursements in bringing this action, and prejudgment and post-judgment interest as appropriate pursuant to 15 U.S.C. § 1117;

H.     Defendant must pay Dymatize punitive damages due to Defendant's willful infringement;

I.     Defendant must report to this Court of its compliance of the foregoing within thirty days of judgment; and,

J.     For such other and further relief that the Court deems just and proper.

### Jury Trial Demanded

Plaintiff hereby demands a jury on all issues so triable.


Date: April 20, 2016                                 Respectfully submitted,

                                                     **Thompson Coburn, LLP**


                                                     By: /s/ Matthew A. Braunel
                                                        Matthew A. Braunel, #50711
                                                        Sartouk H. Moussavi, #65577
                                                        One US Bank Plaza
                                                        St. Louis, MO  63101
                                                        (314) 552-6000
                                                        (314) 552-7000 (fax)

                                                        *Attorneys for the Plaintiff,*
                                                        *Dymatize Enterprises, LLC*